STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF JOHNSTON     NO. 06-CVS-
**6CV 00037**

ENVIRON PRODUCTS, INC.,

    Plaintiff,

v.

UNDERWRITERS LABORATORIES
INC. AND DANIEL P. RYAN

    Defendants.

**COMPLAINT**
(Jury Trial Requested)

NOW COMES the Plaintiff, Environ Products, Inc., complaining of the Defendants, and alleges and says:

## PARTIES

1. Plaintiff Environ Products, Inc. ("Environ") is a Pennsylvania corporation with its principal place of business in Johnston County, North Carolina.

2. Upon information and belief, Defendant Underwriters Laboratories Inc. ("UL") is a Delaware corporation registered to do business in North Carolina.

3. Upon information and belief, Defendant Daniel P. Ryan ("Ryan") is a resident of North Carolina.

4. Jurisdiction and venue are proper in the Superior Court of Johnston County, North Carolina.

## FACTUAL ALLEGATIONS

5. UL develops and publishes standards which are used to evaluate and certify products and systems.

6. UL's standards are used by manufacturers to help design products and systems to meet the requirements for UL certification, by regulatory authorities who reference the standards for products and systems used in their jurisdictions, by code development organizations that adopt and reference UL standards, and by certification organizations that apply UL requirements for product evaluations.

7. Manufacturers also submit products to UL for testing and certification pursuant to those standards and pay fees for such testing.

8. UL authorizes manufacturers to apply the UL Mark to products which meet the requirements outlined in the standards.

9. UL represents in its publications that if a manufacturer plans to market its product nationally it is advisable to obtain a UL Listing.

10. UL recognizes that there are many municipalities that have laws, codes or regulations that call for products to be tested to UL standards.

11. UL has published Methods of Development and Maintenance of UL Standards ("Procedures") to facilitate the development of reasonable standards and revisions to those standards.

12. UL represents that it will use those Procedures to promulgate its standards.

13. According to UL's publications, its standards "are developed under a procedure which provide for participation and comment from the affected public as well as industry. The procedure takes into consideration a survey of known existing standards and the needs and opinions of a wide variety of interests concerned with the subject matter of the standard."

14. UL further represents that "[m]anufacturers, consumers, government officials, industrial and commercial users, and inspection authorities, and others, provide input to UL" regarding the standards.

15. Among other requirements, UL's Procedures require that "[a]ll substantive revisions [be] distributed for review and comment prior to adoption."

16. UL represents that it will only adopt revised UL standards "[a]fter considering comments, received in response to the circulation of the proposed requirements. . ."

17. UL's Procedures also mandate that "[a]ll methods of standards development afford due process to all those affected by the standard."

18. In addition to requiring review and comment for substantive revisions, UL's Procedures ensure a manufacturer has the right to appeal any decision regarding UL's standards and their development.

19. UL expressly states that "UL's operating procedures contain, as an essential part, the right to appeal any decision. . ."

20. UL's Procedures mandate that "[t]his right to appeal exists through each successively higher level of authority in UL's supervisory structure, up to and including the office of the president. . . . If differences still exist relative to technical or engineering interpretations, the issue, particularly an issue pertaining to installation, may be referred to UL's Engineering Councils for advice."

21. Environ manufactures and sells all-thermoplastic flexible pipe for underground fuel storage tanks ("Pipe" or "Environ's Pipe").

3

22. On or about June 1992, Environ and UL entered into a contract governing Environ's use of the UL Mark on its Pipe which is tested pursuant to the requirements in UL 971 – the Standard for Nonmetallic Underground Piping for Flammable Liquids.

23. UL 971 contains the testing requirements for nonmetallic pipe, fittings, and systems which are intended to be used underground in the distribution of petroleum-base flammable and combustible liquids, alcohols, and alcohol-blended fuels.

24. The 1992 contract states: "If the requirements are revised, the continued coverage of the product and the rights of the Subscriber to use the Mark beyond the specified date shall be contingent upon a revised product being submitted to UL, found to comply with the applicable requirements. . . ."

25. Environ's Pipe met the requirements set forth in UL 971, and therefore its Pipe carried a UL Listing, from 1992 until July 1, 2005.

26. In December 2003, UL made substantive revisions to UL 971, embodied in UL 971-2, and these changes have had, and will continue to have, a devastating impact on the companies who make and use non-metallic underground pipe for flammable liquids.

27. In developing UL 971-2, UL grossly deviated from the Procedures it adopted to govern its standard-setting activities. UL ignored virtually every significant procedural safeguard it published and adopted a flawed standard.

28. UL knew or should have known that Environ needs a UL Listing to sell its products in the United States marketplace.

29. As required by its Procedures, up until the issuance of the final version of UL 971-2, UL submitted drafts of the standard for review and comment to the UL 971 Standard Technical Panel ("STP"), subscribers to UL's standards, and other interested parties.

4

9069173.1

30. In February 2003, a draft of UL 971-2 was submitted for review to the STP, subscribers to UL's standards, including Environ, and other interested parties.

31. On December 8, 2003, UL announced a final version of UL 971-2, which would be published on January 2, 2004, and would become effective on July 1, 2005.

32. The December 2003 version contained substantive new and different requirements from the immediately preceding February 2003 draft.

33. These new requirements apply directly to Environ's Pipe.

34. The new and different substantive revisions were not "distributed for review and comment prior to adoption."

35. UL has admitted that it "inadvertently omitted" new requirements set forth in the December 2003 final version from the February 2003 draft.

36. Environ, and numerous other entities, sought to comment on and appeal the final version of UL 971-2 because it is flawed as written.

37. However, after announcing the new, substantive revisions in the December 2003 final version, UL would not allow comment or review prior to UL 971-2's adoption.

38. Environ attempted to appeal the new requirements through each successively higher level of authority in UL's supervisory structure, up to and including the office of the president, but UL failed to follow its own published appeals procedures and refused to allow an appeal.

39. UL adopted UL 971-2 with ineffective, improper, and arbitrary requirements that are flawed and are not supported by sound science.

40. UL 971-2 does not take into consideration the chemical and physical properties of all-thermoplastic pipes, such as Environ's Pipe.

5

9089173.1

41. UL 971-2 penalizes strong all-thermoplastic pipe while favoring weaker pipe constructions with higher failure rates in the field.

42. Ultimately, UL 971-2 does not reasonably measure the safety, strength, and long-term degradation of Environ's all-thermoplastic pipe.

43. Moreover, UL is not testing pipes pursuant to the express requirements set forth in UL 971-2.

44. UL subjects Environ's Pipe to tests which are more difficult than those enunciated in UL 971-2.

45. UL's conduct in both revising and implementing UL 971-2 is preventing Environ from obtaining a UL Listing and selling its Pipe, and therefore is driving Environ out of business.

46. Shortly after UL 971-2 was adopted, UL recognized the problems inherent in the standard and announced that a new standard needed to be issued, however in the meantime, Environ will suffer significant damages.

## FIRST CLAIM FOR RELIEF
(Negligence Against UL)

47. Environ re-alleges the allegations set forth in paragraphs 1 through 45 above, and the same are incorporated by reference herein as if fully set forth.

48. UL owed Environ the duty to use reasonable skill, care, and diligence in developing, revising, and implementing UL 971.

49. UL did not act reasonably and was negligent and breached that duty in the following respects:

6

a. UL violated its own published Procedures for developing and revising standards when it developed and adopted UL 971-2;

b. UL violated its own published appeals Procedures by not allowing Environ to appeal the adoption of UL 971-2's new substantive requirements;

c. UL adopted UL 971-2 with ineffective, improper, and arbitrary requirements that are flawed and not supported by sound science;

d. UL repeatedly violated the express requirements in UL 971-2 when testing Environ's Pipe;

e. In other respects to be proven through discovery and at trial.

50. As a direct and proximate result of UL's negligence, Environ has suffered damages in an amount in excess of Ten Thousand and no/100 Dollars ($10,000).

51. Environ is entitled to compensatory damages in an amount in excess of Ten Thousand and no/100 Dollars ($10,000).

### SECOND CLAIM FOR RELIEF
(Negligence Against Defendant Ryan)

52. Environ re-alleges the allegations set forth in paragraphs 1 through 50 above, and the same are incorporated by reference herein as if fully set forth.

53. As chairman of the STP for UL 971, Defendant Ryan was charged with leading the STP panel through both the consensus and appeals process and assisting with the development of UL 971 by reviewing UL 971 prior to the announcement of its publication on December 8, 2003.

7

9089173.1

54. Defendant Ryan did not allow review or comment prior to the adoption of the new substantive requirements in UL 971-2.

55. Defendant Ryan did not allow review, comment, or appeal of the new substantive requirements following the announcement of UL 971-2 in December of 2003.

56. On February 25, 2004, responding to numerous complaints regarding UL 971-2, Defendant Ryan expressly stated that the STP would only be working "to draft a new edition of UL 971," and that future STP meetings would "not provide an opportunity for discussing issues associated with product certification, such as UL's implementation (a.k.a. "file review") of the UL 971 requirements published on January 2, 2004, or of the associated effective dates."

57. Defendant Ryan owed Environ a duty to act reasonably in developing and revising UL 971, as well as during any appeals process.

58. Defendant Ryan was negligent and breached that duty by violating UL's published standard development Procedures.

59. Defendant Ryan was negligent and breached that duty by adopting UL 971-2 with ineffective, improper, and arbitrary requirements that are flawed and not supported by sound science.

60. Defendant Ryan was negligent and breached that duty by not allowing any appeal of the new, substantive requirements in UL 971-2.

61. As a direct and proximate result of Defendant Ryan's negligence, Environ has suffered damages in an amount in excess of Ten Thousand and no/100 Dollars ($10,000).

62. Environ is entitled to compensatory damages in an amount in excess of Ten Thousand and no/100 Dollars ($10,000).

## THIRD CLAIM FOR RELIEF
(Negligent Misrepresentation Against UL)

63. Environ re-alleges the allegations set forth in paragraphs 1 through 61 above, and the same are incorporated by reference herein as if fully set forth.

64. In the course of UL's business, UL made representations regarding the nature and purpose of its standards, its Procedures for standard development, revision, and appeal, its implementation of its standards, and material matters relating thereto to Environ and other potential manufacturing clients.

65. UL intended for Environ, and the other potential manufacturing clients, to rely on that information.

66. UL owed Environ the duty to use reasonable care that its representations were true and complete.

67. UL failed to exercise reasonable care in making these representations and made misrepresentations and/or material omissions with respect to the nature and purpose of UL 971, as well as to the development, revision, appeal, and implementation of UL 971.

68. Environ reasonably and foreseeably relied, to its detriment, on UL's misrepresentations and repeatedly submitted its products to UL for testing.

69. As a direct and proximate result of UL's material misrepresentations and/or omissions, Environ has suffered damages in an amount exceeding Ten Thousand and no/100 Dollars ($10,000).

70. Environ is entitled to recover from UL damages in excess of Ten Thousand and no/100 Dollars ($10,000).

## FOURTH CLAIM FOR RELIEF
(Breach of Contract Against UL)

9

9089173.1

71. Environ re-alleges the allegations set forth in paragraphs 1 through 69 above, and the same are incorporated by reference herein as if fully set forth.

72. On or about June 1992, Environ and UL entered into a contract governing Environ's use of the UL Mark on its Pipe.

73. That contract states: "If the requirements are revised, the continued coverage of the product and the rights of the Subscriber to use the Mark beyond the specified date shall be contingent upon a revised product being submitted to UL, found to comply with the applicable requirements. . . ."

74. Environ also entered into numerous contracts with UL for testing its Pipe so that the product could be listed, and Environ paid UL fees pursuant to the contracts.

75. Those contracts state that UL will meet Environ's testing and certification needs.

76. UL breached its contracts with Environ by not revising the standard appropriately and not testing Environ's Pipe to the new requirements of UL 971-2.

77. As a direct and proximate result of UL's breach, Environ has suffered damages in an amount exceeding Ten Thousand and no/100 Dollars ($10,000).

78. Environ is entitled to recover from UL damages in excess of Ten Thousand and no/100 Dollars ($10,000).

### FIFTH CLAIM FOR RELIEF
**(Breach of the Covenant of Good Faith and Fair Dealing Against UL)**

79. Environ re-alleges the allegations set forth in paragraphs 1 through 77 above, and the same are incorporated by reference herein as if fully set forth.

10

9089173.1

80. Environ and UL entered into contracts which conferred on UL discretionary powers affecting the rights of Environ.

81. UL violated the covenant of good faith and fair dealing implied in its contracts with Environ, in the following respects:

a. Failing to exercise its discretion in a reasonable manner when both revising UL 971 and testing Environ's pipe;

b. Failing to follow its own standard development Procedures in adopting UL 971;

c. Failing to follow its own published appeals procedures;

d. Developing a biased, unreasonable standard that does not measure the safety of Environ's pipe; and

e. Failing to test Environ's pipe to the version of UL 971 it did adopt;

f. In other respects to be proven through discovery and at trial.

82. As a direct and proximate result of UL's violation of the covenant of good faith and fair dealing, Environ has suffered damages in an amount exceeding Ten Thousand and no/100 Dollars ($10,000).

83. Environ is entitled to recover from UL damages in excess of Ten Thousand and no/100 Dollars ($10,000).

### SIXTH CLAIM FOR RELIEF
**(Unfair and Deceptive Trade Practices Against UL)**

11

84. Environ re-alleges the allegations set forth in paragraphs 1 through 82 above, and the same are incorporated by reference herein as if fully set forth.

85. UL's actions in developing, revising, and implementing UL 971 took place in and affect trade or commerce.

86. UL's actions were unfair in that they were made without regard to the adverse consequences to Environ, were made with disregard as to the fairness to Environ, and constitute an inequitable assertion of power or position to the detriment of Environ.

87. UL's actions were deceptive in that they have the capacity to mislead customers, consumers, and regulators that Environ's pipe is not safe for its intended use.

88. The acts of UL complained of in this Complaint constitute unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 *et. seq.*

89. As a direct and proximate result of UL's actions, Environ has suffered damages in an amount exceeding Ten Thousand and no/100 Dollars ($10,000).

90. Environ is entitled to recover from UL damages in an amount exceeding Ten Thousand and no/100 Dollars ($10,000) and the trebling of said damages pursuant to N.C. Gen. Stat. § 75-16.

WHEREFORE, Environ prays that:

1. Environ recover from Defendants, jointly and severally, an amount in excess of Ten Thousand and no/100 Dollars ($10,000) for its damages, pursuant to its Claims for Relief;

2. The Court enter an injunction precluding the Defendants from using UL 971-2 to certify pipe and ordering them to withdraw UL 971-2 and test all nonmetallic

underground piping for flammable liquids to UL 971-1 until the newest version of UL 971 becomes effective;

    3.     The Court award Environ treble damages pursuant to N.C. Gen. Stat. § 75-16;

    4.     Environ recover from Defendants its reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 75-16;

    5.     The costs of this action be taxed to Defendants;

    6.     Environ receive a trial by jury of all issues so triable;

    7.     The Court award such other and further relief as it deems just and proper.

This the 6th day of January, 2006.

                                KILPATRICK STOCKTON

                                Gregg E. McDougal
                                N.C. Bar No. 27290
                                Jennifer L. Learoyd
                                N.C. Bar No. 34158
                                3737 Glenwood Avenue, Suite 400
                                Raleigh, North Carolina 27612
                                Telephone: (919) 420-1700
                                Facsimile: (919) 420-1800

                                ARMSTRONG & ARMSTRONG, P.A.

                                Lamar Armstrong
                                State Bar No. 9679
                                602 South Third Street
                                Smithfield, NC 27577
                                Tel.: 919-934-1575
                                Fax: 919-934-1846

                                Attorneys for Plaintiff

13

9089173.1